or Minor No. 517-0469. Are both counsel ready? Proceed. May it please the Court, Counsel? Assistant Apology Defender Eun Sun Nam on behalf of the Minor, Luke R. There are three issues on appeal. The State has conceded the third issue, so the focus today will be on the first argument. If there's time, I'll briefly address the issues of the dispositional hearing and the ultimate disposition to the Department of Juvenile Justice. 16-year-old Luke was adjudicated delinquent based on little more than speculation and unreasonable inferences. In his first argument, Luke asked that this Court reverse both of his hate crime adjudications because the State failed to prove beyond a reasonable doubt that Luke specifically spray-painted the hateful words on the Old Knights Prairie Church and the hateful symbol on David Will's spine. To be clear, Luke isn't arguing that the act of spray-painting these hateful words, the hateful symbol, that this doesn't amount to hate crime. Luke's only arguing that the State failed to prove that he was the one that did it. It's not enough for the State to merely prove that Luke was at the scene at the Knights Prairie Cemetery, nor is it enough to merely prove that Luke spray-painted something. Because when you look at the State's exhibits 1, 2, 3, 4A, and 4B, there are many symbols, many letters, many words. But out of all the words, symbols, and letters, the State had to prove that Luke specifically painted these specific words and the specific symbol at issue. Otherwise, as the State did in Count 1, it would just be a criminal damage to property for spray-painting graffiti on these walls. As our Supreme Court observed when people leave Smith, it's not enough to merely speculate that a defendant may have committed the offense in question. Because under such a standard, no one, no citizen, would be safe from prosecution. Here, two minors, Clayton and Felicity, who were very close friends, who'd known each other for years and hung out together often that spring of 2017, which is when the spray-painting incident happened, decided for the first time ever to invite Luke to hang out with them. It was a Friday night after 9 p.m. when these two close friends decided to go pick up Luke and to give him a chance, a quote, to give him a chance, because they believed he didn't have a lot of friends. Clayton then drives the minors to Walmart, where she buys two spray-paint cans. Then, Clayton and Felicity take Luke to the Knights Prairie Cemetery for their first hangout event. And Clayton and Felicity have frequented this cemetery. They knew that the rumors were that it was haunted, that it was abandoned, so they have been there before. And near the cemetery, there are two buildings, the old Knights Prairie Church, which was last active in the 60s. The exterior was last painted maybe 30 years ago. And then there was a private barn owned by David Wolfe that was also nearby. Mr. Wolfe wasn't a resident of the town. He used the barn for hunting, I believe, is what they said. So after walking around the cemetery, the three minors, using Clayton's spray-paints,  Subsequently, a trustee of the town, Kent Darnell, discovers the spray-paintings, alerts the sheriff. The sheriff posts pictures of these spray-paintings, which are found in the estates of Ribbets 1 through 4B. And they post those pictures onto Facebook. And then an anonymous tipster alerts the sheriff, Hey, talk to Clayton and Felicity. And that's because Clayton's initials, CRC, are clearly on a wall, and Felicity's nickname, Facility, is clearly on another wall. After receiving this tip, Sheriff Deputy Lakin goes to Clayton's home, talks to him in front of his father, and this is Clayton who had recently just been in trouble because he got his father's car impounded. And that's because he let Felicity drive the car, but ultimately Luke ended up driving it, and the car got impounded. So he's in trouble already, but now the sheriff comes to his house, and he gives a written statement in front of his father. As soon as the written statement is given, Clayton's father calls Felicity's mother. So you can tell that these two close friends, their parents are also close. And Clayton's father calls her mother, tells her about the visit, and so when Sheriff Deputy Lakin appears in front of Felicity's doorstep, she's not surprised at all to see him. She also gives a written statement in the presence of her mother, and also she explains that this is right after she was yelled at by her mother. So not surprisingly, both minors admit to spray-painting their identifiers, and mainly only their identifiers. So Clayton admits to the CRC, Felicity admits to the facility, and these close friends for the first time implicate Luke. Notably, there's nothing on these walls that implicate Luke. But they testify basically against it, or at least they give a statement against your crime. Right. They give a statement saying that I only painted blank, my close friend only painted blank, and Luke was also there with us, and he spray-painted as well. At the adjudicatory hearing, the state calls four witnesses. So it's Clayton, Felicity, the trustee Kent Darnell, and the sheriff's deputy. No one ever testified that Luke actually spray-painted the hateful words on the church with the blue spray-paint, and that's State's Exhibit 2, or the hateful symbol on the cabin or the barn with the red spray-paint, which is State's Exhibit 3. There's absolutely no direct evidence, and of course the state can make its case with circumstantial evidence. But here, that's the problem. There's an insufficient amount of evidence connecting Luke specifically to these words and symbol. It's not enough that they can just connect him to everything, or not everything, but just connect him generally to everything. It has to be the specific words and the specific symbol. And the juvenile court found that Clayton and Felicity's testimonies are credible, noting that they admitted their involvement. But once again, how can they not when their identifiers are on these walls and the anonymous tipster only identified them initially? So initially, they're the only ones implicated. They're the ones that the sheriff goes visit. Luke is only implicated when these two accomplices tell Sheriff Lakin, or Deputy Lakin. But the standard of review is in light of most favorable to the state, whether any rational trial effect could have found the essential elements of the petition. Is that correct? That's correct, Your Honor. But the argument here is that there is insufficient evidence that connects him to the specific painting, that issue. And it's not enough to just speculate. So even in the light most favorable to the state, this court still needs to address all the evidence that was presented at the adjudicatory hearing. And all the evidence showed that there's inconsistencies, contradictions, plus there's a nature of these testimonies being accomplice testimonies, where Illinois courts have for a long time recognized that they should be viewed with caution, with suspicion. The court did make findings as to credibility, didn't it? That's correct, Your Honor. And found the accomplices to be credible? Can you repeat that? And found the accomplices to be credible? Yes, but the reasoning for it was because they admitted their involvement, right? So here, that was one of the arguments made that they cannot deny involvement. They have identifiers on these walls, while Luke does not. And Luke goes in depth about the contradictions, inconsistencies, and Luke notes that there's no physical corroboration. Kent Darnall and Sheriff Deputy Lakin does testify, but they're testifying off of what Clayton and Felicity tells them. They can tell that there's these paintings on the walls. They took pictures of those. But the specific of who did what is at issue here. That's the only thing at issue. Counsel, isn't that just circumstantial evidence that the court relied upon? And I think you stated earlier, that's a profit. Well, circumstantial evidence has to be rooted in some sort of reasonable inference. Here, we're arguing that there is no reasonable inference. Just because two accomplices say that I only painted A, my accomplice only painted B. We don't know who did the rest, but now there's a bunch of these spray paintings. And they testify that initially when the miners arrived, that these were blank canvases, but that they were able to see through the headlights of a car or a lamppost. But once again, logically, if you look at an area, you can't see all. It's a 3D building. You can't see all of the walls of these buildings. All they have is initially we walked in, they saw that this was a blank canvas because of the headlights, but 3D buildings, right, Your Honor? And the pictures show that there's a lot of paintings on all of these walls. So what we're arguing is that this inference, the circumstantial evidence the court relies on, and the statement that said this is all circumstantial evidence, that was an unreasonable inference to connect Luke specifically to these words. Not just the graffiti in general, but for it to be a hate crime, for it to be, you know, a class 2 felony, a class 3 felony, the state has to prove this case beyond a reasonable doubt. And here I bet they did not do so. So Luke asks that this court reverse his conviction or adjudication.  Thank you, Counsel. May it please the Court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. I'd like to very briefly address Issue 1 regarding the sufficiency of the evidence. Respondent concedes that he went with Mr. Cross and Ms. Hammond to the police station when they went to Knight's Prairie Church and the graffiti was sprayed on the church and the barn. He concedes that there is sufficient evidence that he was seen spraying something. This is from both statements, or from reply brief at pages 7 and 8. Now the phrase, the swastika and the phrase, fuck niggers, was not there when they arrived. This is confirmed not only by the testimony of Mr. Cross and Ms. Hammond, but by Mr. Darnell, who drives by this place every day. I mean, it was the first thing he saw the next day was all this painting. So the graffiti wasn't there. They arrived, there's nothing there. We have the testimony of Mr. Cross and Ms. Hammond that although they painted graffiti, they did not paint the swastika or the phrase, fuck niggers. Nonetheless, it was there the next day. It didn't miraculously appear. The trial court, acting as a finder of fact, knew that Mr. Cross and Ms. Hammond could be charged as accomplices. Nonetheless, he specifically found both Mr. Cross and Ms. Hammond credible. I said that backwards. Mr. Cross and Ms. Hammond credible not once but twice. I said in our brief, people v. Dimerson and people v. Steigle, which are Illinois Supreme Court cases that deal where only accomplice testimony is presented, and the Supreme Court said that's okay. I mean, we presume that this trial court knew the law. We presume he knew that he should take accomplice testimony. We'll say with a grain of salt. Nonetheless, he very specifically found both of these people credible. It's not only an accomplice testimony, it's an accomplice trustee's testimony. Correct. That's correct. I'd like to address the question of whether an express finding is required before a trial court can commit a juvenile to the Department of Juvenile Justice. The defendant's entire reliance is on two cases, Inouye Henry P. and Inouye H.L. And he claimed that these cases say that you do need an express finding by the trial court. But I believe that both of these cases were wrongly decided because the statute in question does not require an express finding and trial courts lack the power to grasp such a requirement onto a statute. Now, I've listed in my brief numerous statutes which require an express finding. Probably most significant is 705 ILCS 405-3-33.5, which is a part of the Juvenile Court Act. It deals with dispositional orders for current minors in need of supervision, and it specifically states that it may include fine, public service, or suspension of driver's license, but only if the court has made an express written finding. The other cases or statutes listed in the state's brief is structured settlements require an express written finding. Refusal to approve a parenting plan requires an express written finding. Publicate statutory guidelines are binding in all cases unless the court makes an express finding a fact. Even Supreme Court Rules, Supreme Court Rule 304, appeal from a final judgment as to one or more, but fewer than all, may be taken only if the trial court has made an express written finding. Supreme Court Rule 299D, payment for appointed counsel fees in excess allowed only when the court makes an express written finding. The statute in question here, Section 5-750 of the Act, requires no express written finding. It says only that before committing a minor to the Department of Juvenile Justice, the trial court shall make a finding. The secure confinement is necessary. Now, courts of review are very reluctant to graft a requiring of an express finding onto statutes that don't have that. I've listed four in the state's brief. People go via. Interpreted Section 5-8-1 of the Code of Corrections, which is dealing with sentences for violent crimes. The trial judge shall specify on the record the particular evidence, information, factors of mitigation and aggravation, and other reasons that led to his sentencing determination. The Govia Court concluded that the trial court was not required to make an express finding in both areas. Section 5-8-1 of the Code of Corrections, this was an older form of statute, but regarding a finding of brutal and heinous behavior. And it says that the Proclivity Court concluded that the trial court was not required to articulate its consideration of mitigating factors or to make an express finding that the defendant lacked rehabilitative potential. Redmond, same thing, same statute as Beauclair, same conclusion. Not required to detail precisely for the record the exact process by which the trial court determines the penalty, nor is the trial court required to articulate its consideration of mitigating factors, nor is it required to make an express finding that the defendant lacked rehabilitative potential. Reed is an earlier version of the statute dealing with concurrent and consecutive terms. The Reed Court says the legislature framed this statute in language that relieves the trial court of any obligation to make an express finding in the record that the imposition of a consecutive term of imprisonment was required to protect the public. Henry P., I'll probably very quickly say, all H.L. does is say, ooh, this case is just like Henry P., so it must be the same result. There's no analysis in H.L. at all. Henry P. graphs a requirement onto this statute to make an express finding, and in that case the court didn't. The state argued the same thing that I'm arguing today, which is that that statute does not actually mandate that the trial court make an express finding. Henry P. rejects this argument, claiming that even if the trial court considered the issue of less restrictive alternatives, it has to expressly state during the proceedings that it made this finding. It improperly overlooked the fact that the legislature framed the language in the statute to relieve the trial court of any obligation to make an express finding. Now, in his reply brief, Respondent says that the state has overlooked the concern raised by Henry P. that if the statute was interpreted as requiring findings based solely on its statement that it considered the issue, would call into question whether express findings were even necessary. Exactly. That's exactly what it would do. As previously noted, the statute doesn't require express findings, and the very fact, concern of Henry P. is wrong. There is, it would call that into question because it should be called into question. Respondent argues that if the statute did not require express findings, the legislature should have amended it between then and now to, and here I am quoting from the reply brief at page 15, to indicate that express findings are not required. The statute, as written, doesn't require an express finding, and Defendant does not cite, excuse me, Respondent does not cite, and the state is unaware of any situation where a statute says that express findings are not required. In fact, the more realistic conclusion is that the legislature considers the statute correct as it is written. Let me read from the order, Counsel. Commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and those efforts were unsuccessful because, and that is left blank, but wasn't there in the hearing an extensive treatment by the trial judge of the reasons for his order? Absolutely, Your Honor. And since that light's red, I can't tell you what they are. Okay, thank you. Counsel, as you get started on your rebuttal, I'll ask you the same question. You heard me read from the order. Tell me why, what the order states and what the judge stated on the record, why that's not sufficient. Your Honor, in the Henry P. and Henry H.L., they're published opinions. They're exactly on point. We ask that this Court follow it. But also, if you look at the order specifically, the Court had many chances here to just make this express finding, especially when the Court is presumed to know the law. And the law in the State so far, through Henry P. and H.L., is that you have to make this express finding. That's because the purpose of the Juvenile Court Act is to protect juveniles. The amendment that was made that Henry P. discussed in its case, that amendment was specifically made so that the Department of Juvenile Justice would be the last resort. That's why this finding is so important. And here, if you look at the order, if you look at No. 3 on there, the Court specifically made a box and X'd it. So here, for No. 4, this is page 68 of the Common Law Report, the Court could have easily done that with No. 4. If you look at 61, page 61, there actually is a box in No. 4, and the Court didn't X it. They didn't mark it. So the Court had chances to do this. All it had to do was make that express finding, and trial courts are supposed to follow the law here. And Henry P. and H.L., that's the law. That's published law. The courts have to follow it. And we ask that this Court follow it as well, because that's the established law that was in 2014, 2016. As counsel read, we argued that the legislature could have amended it further. I mean, they amended the Juvenile Court Act before, so they could have done it, but they did not. They're accepting this. Of course, that's not a rule of law, but that's kind of our trend. If the legislature disagreed with a judicial finding or a judicial decision, they can go and amend the Act. Here, they did not. And I think this is consistent with the fact that the Juvenile Court Act is supposed to protect kids, make sure that the kids aren't sent to a juvenile prison without all of the requirements met, without protecting them. So if you look at our opening brief, we go through the purpose and the requirements of the Act. It's a few pages, but we ask that this Court consider it, because that's why the amendments were made. We want to protect our juveniles before we send them away, because once you send them away, they're grouped together with others. I think the law term effects are bad, and that's on page 34 and 35 of the opening brief. So we do ask that this Court follow Henry Henry P. and Henry H. L. Unless there's any other questions, I want to quickly go back to the first argument. The first argument, I ask that this Court review the evidence fully. There's three minors, two cans. It's curious that Clayton can testify exactly as to what Felicity painted, but he himself is confused as to what he painted. Felicity testifies exactly to what Clayton painted, but at one point she admits on the record, I'm a little confused as to what exactly happened. So this Court knows that the two minors, they were able to talk about what happened and what would happen if they got caught. So that's before they pick up Luke that second day, where Luke gets Clayton's car impounded. So looking at that, and the State cites to Steinle and Jemerson, but in reverse, Luke cites to people Lee Wilson and Ash. I believe they're both Supreme Court cases as well. I think what it means is that this Court has to look at the specific facts of each case. And also I want to turn this Court's attention to this Court's case in Henry D.R.S., where it said that a countless testimony without much corroboration, they do – there's still a concern that the trial judge, one trial judge, can determine the absolute conviction, the credibility of the witness. Of course, the reviewing court gives the trial court discretion, they're in the best position. But when there's nothing really tying Luke in this case to the specific symbols and words at issue, is it enough where these two minors, these two accomplices, they have to admit their guilt? And that was one of the reasons why they found, or the Court found the two kids so credible, if that's enough. Just to say that these two kids, or these two accomplices, they're saying that they know exactly what each other painted, they didn't do it. All right, we ask that this Court reverse Luke's adjudication. Thank you. Thank you, counsel, for your arguments. The Court will take this matter under advisement and render a decision in due course.